UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEANETTE BERDING,

    Plaintiff,

v.                                                          CASE NO. 8:16-cv-596-T-MCR

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits, alleging disability beginning August 15, 2007.  (Tr. 140.)  A video hearing was held before the assigned Administrative Law Judge ("ALJ") on June 3, 2014, at which Plaintiff was represented by an attorney.  (Tr. 19-40.)  The ALJ found Plaintiff not disabled from August 15, 2007 through December 31, 2011, the date last insured.[2]  (Tr. 60-66.)

In reaching his decision, the ALJ found that Plaintiff's asthma/emphysema was a severe impairment, but her hypertension, bronchitis, hyperlipidemia, and osteoporosis were not.  (Tr. 62.)  The ALJ also found that Plaintiff had the

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Docs. 10, 18.)

[2] Plaintiff had to establish disability on or before her date last insured in order to be entitled to a period of disability and DIB.  (Tr. 60.)

residual functional capacity ("RFC") to perform a reduced range of light work. (Tr. 63.) Then, the ALJ found that Plaintiff was capable of performing her past relevant work as a ticket taker, as actually performed. (Tr. 65.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from August 15, 2007 through December 31, 2011. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **AFFIRMED**.

**I.     Standard of Review**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th

Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff raises three issues on appeal. First, Plaintiff argues that the ALJ erred in finding that her osteoporosis was a non-severe impairment at step two of the sequential evaluation process and also in failing to account for limitations related to her osteoporosis in determining the RFC.[3] Second, Plaintiff argues that the ALJ failed to fully and fairly develop the administrative record by failing to seek a consultative examination, or rule upon Plaintiff's request for one. Finally, Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence and is the product of legal error. The Court finds no reversible issue.

In the Eleventh Circuit, "[t]he finding of any severe impairment . . . is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." *Burgin v. Comm'r of Soc.*

---

[3] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4).

*Sec.*, 420 F. App'x 901, 902 (11th Cir. Mar. 30, 2011).  Therefore, even if the ALJ erred by not finding Plaintiff's osteoporosis to be a severe impairment, the error is harmless because the ALJ found at least one severe impairment.  *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (per curiam) ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that [plaintiff] had a severe impairment: [sic] and that finding is all that step two requires. . . . Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").

At step two, the ALJ found that Plaintiff's asthma/emphysema was a severe impairment, but her osteoporosis, hypertension, bronchitis, and hyperlipidemia were not, because:

> [T]he record reflects either no functional limitations or very few (Exhibits 1F, 5F).  These conditions have been relatively controlled with regular medication.  The medical evidence establishes only a slight abnormality or combination of slight abnormalities, which would have no more than a minimal effect on the claimant's ability to perform basic work activity[.]

(Tr. 62.)

Although the ALJ did not find Plaintiff's osteoporosis to be a severe impairment, he did not ignore it.  For example, the ALJ noted that an osteo torso dexa scan from October 2002 showed Plaintiff had osteoporosis of the lumbar spine, but the medical records revealed that it did not pose significant functional

limitations. (Tr. 64.) The ALJ also noted:

> At the hearing, [Plaintiff] said she slouches and has pain in her back and shoulders. However, the record does not reflect any complaints of pain associated with her osteoporosis nor does the record show she suffered from any fractures. A treatment note from Florida Hospital dated September 2002 show [sic] she had mild paracervical spasm which could be a possible symptoms [sic] of osteoporosis; however, her pain, later diagnosed as cervical strain was likely due to [a] motor vehicle accident she was involved in (Exhibit 4F, p. 4). Moreso [sic], this paracervical spasm does not occur in her medical treatment record with any frequency and her complaint was made prior to her alleged disability onset date. Nonetheless, although not severe, the undersigned has accounted for reasonable pain and limitation associated with lumbar osteoporosis in the claimant's capacity assessment.

(Tr. 64; *see also* Tr. 63.)

As shown by the ALJ's decision, he adequately considered all of Plaintiff's impairments, both severe and non-severe, in combination, and his findings are supported by substantial evidence. (*See, e.g.*, Tr. 209 (listing osteoporosis under Plaintiff's past medical history in an October 13, 2008 treatment note), 221 (listing osteoporosis under Plaintiff's past medical history in a January 9, 2009 treatment note), 270 ("Osteoporosis screening was performed over the lumbar spine and left femoral neck using DEXA technique [on October 28, 2002]. . . . This patient has osteoporosis and is at high risk for fractures."); Tr. 276 (assessing cervical strain on September 30, 2002 after a motor vehicle accident).) Although the record includes references to a diagnosis of osteoporosis dating back to 2002, a mere diagnosis says nothing about the severity of the condition. *See Moore v.*

*Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (stating "the mere existence of these impairments does not reveal the extent to which they limit her ability to work").  The ALJ considered Plaintiff's impairments and incorporated into the RFC assessment only those limitations resulting from the impairments, which he found to be supported by the record.  (*See* Tr. 63 (finding Plaintiff capable of performing light work "except the claimant would need to avoid frequent exposure to humidity and wetness and extremes in cold and heat.  The claimant would never be able to tolerate exposure to atmospheric conditions such as dusts, fumes, gases and environmental irritants.  The claimant should never work around unprotected heights, and only occasionally climb ramps and stairs.").)  Therefore, Plaintiff's first argument fails.

Turning to Plaintiff's second argument, the Court finds no reversible error.  Plaintiff argues that the ALJ erred in failing to order a consultative examination because Plaintiff requested one and she could not afford treatment.  However, there is only one reference in the record from January 9, 2009 that Plaintiff had "financial restraints," as a result of which she delayed an urology consult.[4]  (Tr. 222.)  The testimony from the hearing indicates that Plaintiff lost her insurance when she stopped working, but she was still covered under her husband's insurance until 2012.  (Tr. 31-32.)  Although Plaintiff's counsel requested a consultative examination at the hearing because Plaintiff "had no insurance since

---

[4] Plaintiff does not argue that she is disabled due to any urological issues.

6

2012," the request was made for the purpose of extrapolating Plaintiff's lung condition at her date last insured—December 31, 2011—when Plaintiff was still covered under her husband's insurance.  (Tr. 22.)

To the extent Plaintiff argues that the ALJ erred in failing to explain his decision about the request for a consultative examination, any error in this regard is harmless.  At the hearing, the ALJ suggested he would give the request some consideration, but he also expressed doubts that a consultative examination would be able to extrapolate Plaintiff's condition "with this sort of remote [date last insured]."  (Tr. 22; see also Tr. 39.)  In essence, the ALJ implicitly rejected Plaintiff's request for an examination.  Because the evidence was sufficient to make a determination on Plaintiff's claim of disability, the ALJ was not required to obtain a consultative examination.  See 20 C.F.R. § 404.1517.  Moreover, the ALJ did not need to rely on the opinion of any particular source, including the opinion of a consultative examiner, in assessing the RFC.  See 20 C.F.R. § 404.1546(c).  In addition, because Plaintiff was represented by counsel throughout the proceedings, the ALJ did not have an elevated duty to develop the record.

Plaintiff's final argument is that the ALJ's credibility determination is unsupported by substantial evidence and is the product of legal error.  The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but Plaintiff's statements concerning

7

the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (Tr. 64.) The ALJ explained:

> The activities [Plaintiff] reported doing on a regular basis show that her respiratory problems are not as severe as alleged. She remains able to cook and prepare meals, do laundry and shop; although she reports she has to take it slow (Exhibit 4E, p. 9).
>
> As for the opinion evidence, no treating or examining source has rendered an opinion in this case. However, the State agency medical consultant, Sunita Patel, M.D., opined in a residual functional capacity assessment, that prior to the claimant's date last insured of December 31, 2011, she was capable of performing medium exertion work with frequent climbing of ramps and stairs and only occasional climbing of ladder[s], ropes and scaffolds. Additionally, Dr. Patel recommended the claimant avoid concentrated exposure to extremes of col [sic], humidity, hazards and fumes, odors, dusts, gases and poor ventilation (Exhibit 3A).
>
> The claimant's representative argued at hearing that the claimant would need to use her nebulizer machine at least 4 times throughout the workday. She said this was prescribed to the claimant some two years ago, after her date last insured. This argument is discounted because she said she started using a nebulizer "two-years ago" which is after her date last insured of December 2011. Prior to this date, there is no mention in the medical evidence to support her need or use of a nebulizer machine at the frequency she alleges. Neither her primary care doctor, Dr. Shoreibah, nor her treating doctor at Center for Living Well, Dr. Houman Bolourian, have discussed her need for a nebulizer. She was only using Symbico[r]t and Albulterol [sic] inhalers on an as needed basis.
>
> . . . Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been limited and essentially routine/conservative in nature, [and] the undersigned finds that the claimant's impairments do not impose functional limitations to the degree alleged by the claimant.

(Tr. 65.)

The ALJ provided explicit and adequate reasons, supported by substantial evidence, for his credibility determination. Contrary to Plaintiff's argument, the ALJ did not fail to acknowledge her difficulty breathing and his characterization of her daily activities is supported by substantial evidence. (*See* Tr. 26, 65.) Further, Dr. Patel's opinions support the ALJ's conclusion that Plaintiff's impairments do not impose functional limitations to the extent alleged by Plaintiff. (*See* Tr. 52-53.) Moreover, the ALJ's reasons for discounting Plaintiff's representations regarding use of a nebulizer are supported by substantial evidence. (*See* Tr. 210 (prescribing "[A]lbuterol MDI to use p.r.n." on October 13, 2008), 216 (pulmonary function report of October 31, 2008 revealed "a minimal restrictive ventilatory impairment"), 233-34 (stating, on April 27, 2012, that Plaintiff "has inhalers which she uses on [sic] as needed basis" and noting that the dose for Albuterol was two puffs every six hours as needed and the dose for Symbicort was one puff twice a day).)

Plaintiff also argues that the ALJ failed to consider her work history as a factor favoring credibility. The ALJ considered Plaintiff's prior work as a ticket taker and a wheelchair and stroller rental clerk. (Tr. 35, 65.) Although the ALJ did not expressly state that Plaintiff's work history has been considered as a factor in determining Plaintiff's credibility, any error in this respect would be harmless in light of the adequate reasons, supported by substantial evidence, that the ALJ provided for discounting Plaintiff's credibility.

### III. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. Based on this standard of review, the Court concludes that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question is due to be affirmed.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on December 20, 2016.

*[signature]*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record